T. LOUIS JERKINS AND DIANA L. JERKINS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jerkins v. Commissioner
Docket No. 39562-87
United States Tax Court
T.C. Memo 1991-571; 1991 Tax Ct. Memo LEXIS 619; 62 T.C.M. (CCH) 1270; T.C.M. (RIA) 91571; November 25, 1991, Filed *619 Decisions will be entered under Rule 155. P. Kevin Walther, for the petitioner T. Louis Jerkins. Michael L. Morgan, for the petitioner Diana L. Jerkins. Eric B. Jorgensen, for the respondent. GERBER, Judge. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioners' 1983 Federal income tax in the amount of $ 37,321, a $ 1,866 addition to tax under section 6653(a)(1)[1] plus an additional amount equal to 50 percent of the interest due solely to negligence under section 6653(a)(2), and a $ 9,330 addition to tax under section 6661. After concessions, [2] the issues presented for our consideration are: *620 1. Whether payments made by two corporations to or on behalf of petitioners in the amount of $ 53,264.52 during 1983 constituted unreported income; 2. Whether petitioners are liable for the addition to tax under section 6653(a) for negligence or intentional disregard of the rules and regulations; 3. Whether petitioners are liable for the addition to tax under section 6661 for substantial understatement of income tax; and 4. Whether petitioner wife is an innocent spouse under section 6013(e) with regard to the income tax deficiency determined by respondent for the 1983 taxable year. FINDINGS OF FACT The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners were husband and wife during 1983, and they filed a joint 1983 Federal income tax return with the Internal Revenue Service Center, Chamblee, Georgia. At the time petitioners filed their petition in this case, they resided in Atlanta, Georgia. During 1983 petitioner husband was a self-employed certified public accountant and also the sole shareholder and president of Southern Leasing Systems, Inc. (Southern), a State of Delaware corporation. Southern was incorporated in 1982 to *621 buy and lease energy conservation equipment to various partnerships. Southern was the sole shareholder of Financial Forecasting (Financial), a Georgia corporation with petitioner husband as its president. Financial was incorporated to buy, hold, improve, lease, rent, use, mortgage, and sell real and personal property. Financial was also formed to act as Southern's confidential agent. For taxable year 1983, Financial and Southern leased a large upstairs room in petitioners' home for office space and a room on the lower floor as a reception area for $ 12,000 a year. During 1983, petitioner wife was employed as a horticulturist and taught biology on a part-time basis. At the time of the trial, petitioner wife was enrolled in the doctorate program at the University of Georgia. Petitioner wife did not participate in the business affairs of the two corporations operated by her husband. She did not participate in the bookkeeping and did not examine the financial records of petitioner husband's corporations. Petitioners maintained separate checking accounts and credit card accounts and each paid their own individual bills. However, petitioners both contributed to and paid household *622 expenses from a joint account. Petitioner husband had a credit card account at Rich's Department Store, and petitioner wife used the account to purchase clothing for her daughter. Also, during taxable year 1983, petitioner wife made purchases with petitioner husband's Exxon and American Express credit cards. During 1983, Financial made several payments to petitioners and to third parties on their behalf. Financial made the following expenditures to third parties during 1983: Payee
Amount
Alfred's Chevron
$    686.66
American Express
3,413.29
Art Marble
131.04
Baron Rolen Jewelers
104.00
Citizen Jewelry
9,441.78
Dean Witter Reynolds
3,309.08
Exxon
710.61
First Georgia Bank
1,431.87
James Cherry
1,240.00
March of Dimes
5.00
National Bank of Georgia
10,547.12
Rich's
266.63
Total
$ 31,287.08
Financial also made direct payments totaling $ 5,000 to petitioner wife and payments totaling $ 13,900 to petitioner husband during 1983. Petitioners did not include these amounts in income during 1983. The $ 686.66 payment to Alfred's Chevron was for brake repair expenses for a 1975 Chevrolet Corvette titled in Southern's name during taxable year 1983. Petitioners *623 regularly drove the Corvette, and automobile insurance was purchased by petitioner wife. On December 23, 1982, a 1983 Chrysler LeBaron station wagon was purchased for $ 13,744.81 by petitioner husband in the name of Financial. The car was originally ordered in petitioner husband's name but was ultimately titled in Financial's name. Financial entered into an installment note with the National Bank of Georgia to finance the Chrysler LeBaron for a period of 48 months commencing on February 10, 1983. The amount of each installment was $ 307. A portion of the $ 10,547.12 expenditure ($ 3,377) to the National Bank of Georgia represented payment on the installment note. A Dodge Aspen valued at $ 3,055.46 owned by petitioner wife was traded to buy the Chrysler LeBaron. Petitioner wife drove the Chrysler and purchased an automobile insurance policy for the car for the period from April 20, 1983 to October 20, 1983. During 1983, petitioner husband purchased a lady's diamond Hamilton watch, diamond solitaire ring, and a cordless telephone for $ 9,441.78 from Citizen's Jewelry. Petitioner husband had an account at Citizens, and the $ 9,441.78 was originally charged to that account. *624 However, Financial paid the entire $ 9,441.78 for these purchases. Petitioner wife occasionally wore the diamond Hamilton watch and diamond solitaire ring. As a formality, petitioner wife and Financial executed two lease agreements whereby petitioner wife agreed to pay rent for use of the jewelry valued at $ 9,441.78. However, petitioner wife never made rental payments for use of the jewelry. Petitioner husband entered into a line of credit agreement with Financial on December 14, 1982, establishing a $ 75,000 credit limit. The term of the agreement expires on April 1, 1999, at which time all unpaid amounts are required to be paid in full. The finance charge which accrued for advances made during 1983 totaled $ 2,558.65. Petitioner has not made any repayments of payments purportedly made pursuant to Financial's line of credit. During 1983, Southern also made the following payments to petitioners and third parties: 1) Payment to petitioner wife in the amount of $ 2,000 reported on Southern's books and records as a note receivable; 2) payment to petitioner husband in the amount of $ 500 reported on Southern's books and records as professional fees; and 3) payment to Stereo Village *625 in the amount of $ 577.44 for stereo equipment originally purchased on petitioner husband's personal credit card. On October 28, 1982, petitioner entered into a line of credit agreement with Southern with an established credit limit of $ 100,000. The finance charges accruing on advances made during 1983 totaled $ 118.95. Petitioner husband has not made any repayments of payments purportedly made pursuant to Southern's line of credit. Petitioner wife authorized petitioner husband to sign various documents such as promissory notes and deposit tickets on her behalf and had given her husband a power of attorney in the past. Petitioner, without his wife's knowledge, occasionally completed transactions involving her personal accounts, such as depositing money into her account. Some of these transactions involved Southern and Financial. Petitioner husband prepared petitioners' 1983 Federal income tax return. Petitioner wife did not participate in such preparation other than providing petitioner husband with documentation of her income and expenses. She relied on petitioner husband to prepare and file the return. Petitioner wife did not review the return and had no knowledge of *626 its contents. Petitioner wife did not sign the return; rather, petitioner husband placed her name on the return. We note that petitioner wife does not argue that petitioner husband was unauthorized to act on her behalf. Subsequent to the issuance of the notice of deficiency and prior to trial, respondent requested the specific documents reflecting income used by petitioners to prepare their 1983 Federal income tax return. Petitioners refused to meet with respondent or provide any requested documentation. However, respondent was able to obtain certain accounting records for 1983 in the course of an examination of Southern. None of these records showed any accounts receivable due from petitioner husband pursuant to the lines of credit. Respondent's revenue agent reconstructed petitioners' income and determined that all payments made to petitioners or on their behalf by Southern and Financial during 1983 were income to petitioner husband either as compensation for services rendered or dividends. Respondent's reconstruction resulted in the following computations which were set forth in the notice of deficiency to petitioners for 1983: Payments from Southern to petitioner husband
$ 2,500
Payments from Southern for petitioner husband
577
Payments from Financial to petitioner husband
18,900
Payments from Financial for petitioner husband
31,287
Total additional income
[3] $ 53,264
*627 OPINION The issues in this case pertain to payments made by Financial and Southern to petitioners or to third parties on their behalf, and to petitioners' use of certain assets purchased by the two corporations. Under section 6001, all taxpayers are required to keep sufficient records to enable respondent to determine their correct tax liability. In the absence of adequate books and records, the existence and amount of a taxpayer's income may be proven by any method that clearly reflects income. Sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132, 99 L. Ed. 150, 75 S. Ct. 127 (1954); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Petitioners bear the burden of proving that respondent's determination is in error. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933). *628 Respondent argues that petitioners received unreported income from Southern and Financial in the amounts of $ 3,077.44 and $ 50,187.08, respectively. Respondent argues that the unreported income totaling $ 53,264.52 arose from the various payments to petitioners and to third parties for their personal benefit. Petitioners argue that the vast majority of the disputed payments by Financial and Southern were properly excluded from their 1983 income because the payments were made either for the purchase of corporate assets or represented loans between petitioner husband and the two corporations pursuant to the line of credit agreements. Petitioners contend that the corporate payments totaling $ 53,264.52 consisted of the purchase of corporate assets in the amount of $ 17,524.88 and legitimate loans in the amount of $ 30,898.25 pursuant to lines of credit agreements with Southern and Financial. Petitioners did not account for the difference between amounts claimed to represent loans or corporate purchases and the amount of unreported income determined by respondent. Petitioner wife also argues that she qualifies as an innocent spouse under section 6013(e). I. The Deficiency *629 Determination
We first address petitioners' contention that $ 17,524.88 of the disputed payments are not includable in income because they were made for the purchase of corporate assets. This figure arises from a $ 577.44 payment for stereo equipment by Southern, payments totaling $ 9,441.78 to Citizen Jewelers by Financial, eleven monthly payments of $ 307 (totaling $ 3,377) by Financial to the National Bank of Georgia for a Chrysler LeBaron station wagon, and payments totaling $ 4,128.66 by Financial to the National Bank of Georgia for video equipment. The record establishes that most of these assets were not corporate assets. Southern paid $ 577.44 to Stereo Village for stereo equipment. This expenditure was shown on Southern's books and records as Machinery and Equipment. Petitioner wife testified that her husband purchased the stereo equipment for his office. We are satisfied that the equipment was for business purposes; therefore, respondent incorrectly included the $ 577.44 in petitioners' income. However, we find that the purchases of a diamond Hamilton watch, diamond solitaire ring, and a cordless phone from Citizen Jewelry by Financial were not corporate assets *630 but personal assets and compensation to petitioner husband. On numerous occasions, this Court has addressed the tax consequences of certain payments from a corporation to or on behalf of its officers, employees, or stockholders. See, e.g., Enoch v. Commissioner, 57 T.C. 781 (1972); American Properties, Inc. v. Commissioner, 28 T.C. 1100 (1957), affd. per curiam 262 F.2d 150 (9th Cir. 1958). In Silverman v. Commissioner, 28 T.C. 1061, 1064 (1957), affd. 253 F.2d 849 (8th Cir. 1958), this Court set forth the following principle: It is also well settled that where funds of a corporation are disbursed for the personal use or economic benefit of a stockholder or his immediate family, there being no intention of repayment, the amounts so disbursed are either the equivalent of corporate distributions or additional compensation for services (depending upon the facts and circumstances), especially in the case of dealings between closely held corporations and their stockholders. [Citations omitted.]
In the instant case, petitioner wife wore the diamond Hamilton watch and diamond solitaire *631 ring purchased by Financial. This jewelry was originally charged to petitioner husband's account. Petitioners attempted to disguise the personal expenditure as corporate assets by executing two lease agreements whereby petitioner wife agreed to make rental payments for the use of the jewelry. Petitioner wife testified that the leases were options to purchase the jewelry and that she did not make any lease payments. The record also does not establish that petitioner husband purchased the 1983 Chrysler LeBaron station wagon titled in Financial's name as a corporate asset. Rather, petitioner wife drove the Chrysler during 1983 and purchased an automobile insurance policy for the car. Petitioner wife was not an employee or officer of Financial; hence, she used the car solely for personal purposes. Petitioner wife did not pay any rent for the use of the car. The car was purchased in Financial's name to give credence to petitioners' contention that it represented a corporate asset, but it was actually owned by petitioners. We hold that petitioners improperly omitted the eleven monthly payments of $ 307 ($ 3,377) from their 1983 income. Financial paid $ 4,128.66 to National Bank *632 of Georgia for video equipment. Petitioner wife testified that petitioner husband used the video equipment for work in his office. Petitioners did not provide any documentation to substantiate their claim that the video equipment was a corporate asset. Petitioners have offered no evidence other than uncorroborated self-serving testimony. Accordingly, petitioners failed to prove that the $ 4,128.66 for video equipment was not includable in income. We next address petitioners' contention that $ 30,898.25 of the corporate payments represented legitimate loans to petitioner husband. Petitioners contend that Financial made the following payments totaling $ 28,398.25 pursuant to the line of credit during 1983: Payee
Amount
Petitioner wife
$  5,000.00
Petitioner
13,900.00
American Express
3,413.29
Cash
[4] 100.00
First Georgia Bank
1,431.87
James Cherry
1,240.00
March of Dimes
5.00
National Bank of Georgia
3,041.46
Rich's
266.63
Total
$ 28,398.25
*633 Petitioners also contend that the $ 2,500 in payments made by Southern to petitioners were pursuant to the line of credit agreement. [5]
Petitioner husband has not made any repayments of payments made by Southern and Financial to petitioners or to third parties purportedly made pursuant to the line of credit agreements. Rather, petitioners contend that the loans have been repaid by setoffs against the amounts owed by petitioner husband. Petitioners attempt to support this contention by offering an unsigned promissory note from Southern to petitioner husband in the amount of $ 1 million. Additionally, petitioners offered an unsigned promissory note whereby Southern agreed to pay petitioner husband $ 157,250 in consideration for a noncompete agreement. The noncompete agreement *634 was also unsigned. Although we agree with petitioners' contention that a setoff may be used to settle a debtor's outstanding debt to a creditor, there is no showing that the promissory notes and noncompete agreement were ever executed. Additionally, the majority of unreported income arose from Financial's payments to petitioners or to third parties. Our rejection of petitioners' contention that the payments were repaid by setoffs would not preclude a determination that petitioners properly omitted the payments form income if the payments represented valid loans under the line of credit agreements. It is well established that loans received by taxpayers are excludable from gross income. Falkoff v. Commissioner, 62 T.C. 200, 206 (1974); Arlen v. Commissioner, 48 T.C. 640, 648 (1967). Whether amounts are to be considered bona fide loans is a question of fact to be determined from all the facts and circumstances. Beaver v. Commissioner, 55 T.C. 85, 91 (1970). Some of the factors to be considered are: Whether the taxpayer intended to repay the loan; whether the creditor intended to enforce the obligation; whether the parties *635 were dealing at arm's length; whether the loan was in writing; whether the loans provided for interest; whether actual repayments were made; and the business purpose for making the loan. See Beaver v. Commissioner, supra; Arlen v. Commissioner, supra.[6]
After consideration of the record, we hold that the line of credit agreements did not represent true obligations. Petitioner husband has not made any repayments of the purported loans by Financial and Southern. It is unlikely that Southern and Financial would have enforced the obligations because petitioner husband controlled both corporations. Moreover, there is a discrepancy in petitioners' position. On the one hand, petitioners argue that the payments to petitioner wife constituted repayment of loans. These payments are also listed as payments advanced to petitioners pursuant to the line of credit. Additionally, petitioner wife argued *636 that $ 3,000 of the payments represented repayment of $ 3,055.46, the value of her Dodge Aspen used as a trade-in to purchase the 1983 Chrysler LeBaron. However, we have already concluded that the 1983 Chrysler LeBaron was not a corporate asset but was owned by petitioners individually. We conclude that the line of credit agreements were drafted to disguise the true nature of the transactions. All payments under these agreements constitute income to petitioners. Petitioners failed to present evidence relating to the payments to Art Marble ($ 131.04), Baron Rolen Jewelers ($ 104), [7] Dean Witter Reynolds ($ 3,309.08), and Exxon ($ 710.61). Accordingly, we sustain respondent's determination that these items were improperly omitted from income. *637 We also conclude that the $ 686.66 payment to Alfred's Chevron for brake repair for a Corvette titled in Southern's name is unreported income to petitioners. Petitioner wife testified that petitioners regularly drove the car. She also testified that she did not know whose name the car was titled in during 1983. We find that the car was owned and used for personal purposes by petitioners; therefore, the cost of repair work on the car is income to petitioners. Accordingly, we conclude that the payments made to or on behalf of petitioner husband by Southern and Financial were made because of his employment relationship with these corporations and were income to petitioner husband. We hold that petitioners earned unreported income in the amount of $ 52,687.08. The only item which petitioners properly omitted from income was the $ 577.44 payment by Southern to Stereo Village for stereo equipment. II. Additions to Tax
Respondent also determined that petitioners are liable for additions to tax under section 6653(a)(1) and (2), and section 6661. Petitioners have the burden of proving that respondent's determination of the additions to tax was in error. Rule 142(a). Section *638 6653(a) provides for an addition to tax if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations. Negligence under section 6653(a) is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioners have not presented any evidence establishing that any part of the deficiency was not due to negligence or intentional disregard of the rules; therefore, we must sustain the addition to tax under section 6653(a). The next issue is whether petitioners are liable for the section 6661 addition to tax for substantial understatement of income tax for the 1983 taxable year. A substantial understatement exists where the amount of the understatement of income tax for the year exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. Sec. 6661(b)(1). Petitioner presented no arguments at trial or on brief relating to the section 6661 addition to tax. Petitioners' income tax liability will be computed under Rule 155 in accordance with this opinion. Accordingly, we hold that *639 the section 6661 addition to tax applies if the Rule 155 computation discloses understatements that warrant imposition of the addition. III. Innocent Spouse
When a husband and wife file a joint Federal income tax return, liability for the tax due is joint and several; hence, each spouse may be required to pay the entire amount. Sec. 6013(d)(3). Relief is provided under the innocent spouse provisions of section 6013(e). That section states: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES. -- (1) In General. -- Under regulations prescribed by the Secretary, if -- (A) a joint return has been made under this section for a taxable year, (B) on such return there is a substantial understatement of tax attributable to grossly erroneous items of one spouse, (C) the other spouse establishes that in signing the return he or she did not know, and had no reason to know, that there was such substantial understatement, and (D) taking into account all the facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such substantial understatement, then the other spouse shall be relieved of liability *640 for tax (including interest, penalties, and other amounts) for such taxable year to the extent such liability is attributable to such substantial understatement.
The burden of proof is on petitioner wife to prove that she satisfies each element of the requirements of section 6013(e)(1). Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Bokum v. Commissioner, 94 T.C. 126, 138 (1990). The parties agree that the requirement of section 6013(e)(1)(A) has been met. At issue are the requirements under section 6013(e)(1)(B), (C), and (D). Section 6013(e)(1)(B) requires petitioner wife to prove a substantial understatement of tax on the joint return which is attributable to grossly erroneous items of petitioner husband. Generally, a substantial understatement is an understatement exceeding $ 500. Sec. 6013(e)(3). We have already concluded that there was unreported income in the amount of $ 52,687.08. A grossly erroneous item is defined in section 6013(e)(2) as any item of gross income attributable to the other spouse and that is omitted from gross income, or any claim for deduction, credit, or basis by that spouse for which there is no basis in *641 law or fact. Petitioner wife has shown that the understatement of tax at issue is not attributable to her compensation and that the amount of $ 52,687.08 was, at least in part, attributable to grossly erroneous items. Moreover, petitioner wife has never been a shareholder, director, or employee of either corporation. As to the knowledge requirement of section 6013(e)(1)(C), petitioner wife must establish that she did not know, or have reason to know, of the substantial understatement of tax. The test applied to determine whether a spouse had reason to know is whether a reasonably prudent person in the taxpayer's position had reason to know or would be expected to know that the tax liabilities were substantially understated. Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. a Memorandum Opinion of this Court; Sanders v. United States, 509 F.2d 162, 167 (5th Cir. 1975). Petitioner wife relied on her husband, a certified public accountant, to prepare and file their joint returns. Petitioner wife did not participate in the business affairs of Southern or Financial and did not examine their financial records. Petitioners *642 maintained a conservative lifestyle and made no unusual or extravagant expenditures during 1983. However, a spouse cannot close her eyes to facts that might give her reason to know of the unreported income. Terzian v. Commissioner, 72 T.C. 1164, 1171 (1979). Petitioner wife insured and drove the 1983 Chrysler LeBaron and 1975 Corvette purportedly owned by Financial and Southern, respectively. She wore jewelry paid for by Financial. Petitioner wife claimed that she had entered into an option with Financial even though she had signed a document entitled "Lease Agreement." Petitioner wife is an educated person who is completing her doctorate degree. She allowed her husband to make transfers to her accounts without question. We conclude that petitioner wife had reason to know of the understatement of income. The final element petitioner wife must prove is that, under all of the facts and circumstances, it is inequitable to hold her liable for the deficiencies attributable to the substantial understatements in tax. Sec. 6013(e)(1)(D). We will address this final element for completeness. In deciding whether it is inequitable to hold petitioner wife liable *643 for the deficiencies, we take into account whether she significantly benefited, either directly or indirectly, from the items omitted from gross income. Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); sec. 1.6013-5(b), Income Tax Regs. Normal support is not a significant benefit for purposes of determining whether it is inequitable to hold petitioner liable for a deficiency. Sec. 1.6013-5(b), Income Tax Regs.; Flynn v. Commissioner, 93 T.C. 355, 367 (1989); Terzian v. Commissioner, supra at 1172. However, evidence of a significant benefit arises from transfers of property to the spouse. Sec. 1.6013-5(b), Income Tax Regs. Under the circumstances of this case, it is not inequitable to hold petitioner wife liable for the tax and additions to tax because the facts show that petitioner wife significantly benefited by her use of the jewelry and car purchased by Financial in addition to the various payments deposited into her account. Accordingly, a consideration of these elements shows that petitioner *644 wife is not entitled to innocent spouse relief under section 6013(e). To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Section references are to the Internal Revenue Code as amended and in effect for the year in issue. Rule references are to the Tax Court's Rules of Practice and Procedure.↩
2. The parties have reached the following settlement with regard to certain adjustments in the notice of deficiency: 1) Respondent concedes Adjustment C of the notice of deficiency; 2) Schedule E rental expenses and depreciation allowed are $ 7,228 and rental income is reduced by $ 5,800; 3) Schedule C expenses allowed are $ 1,895; 4) Adjustment E excess itemized deductions allowed are $ 6,426; and 5) petitioners concede the disallowance of investment credit in the amount of $ 987.↩
3. Respondent's notice of deficiency set forth additional income in the amount of $ 52,264. We allowed respondent to amend his pleadings pursuant to Rule 41 at the end of trial to conform the pleadings to the evidence.↩
4. Respondent did not compute this $ 100 into his deficiency determination. Therefore, we will not address this payment.↩
5. In addition to the $ 2,500, the parties introduced schedules reflecting a payment in the amount of $ 25.29 to the National Bank of Georgia pursuant to the line of credit. However, neither party addressed this item at trial or on brief.↩
6. See also Gumbs v. Commissioner, T.C. Memo 1984-666↩.
7. Respondent's agent determined that the payment of $ 104 to Baron Jewelers was for the purchase of a clock. Because there were no records to show that the clock was a corporate asset, respondent determined that the $ 104 payment was for the purchase of a personal asset and made on petitioners' behalf.↩