ESTATE OF ROBERT E. SYMPSON, DECEASED, ELIZABETH C. SYMPSON PERSONAL REPRESENTATIVE AND ELIZABETH C. SYMPSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Sympson v. Commissioner
Docket No. 971-92
United States Tax Court
T.C. Memo 1994-2; 1994 Tax Ct. Memo LEXIS 3; 67 T.C.M. (CCH) 1914; January 5, 1994, Filed *3 Decision will be entered under Rule 155. For petitioners: Bruce Hallmark. For respondent: Steven B. Bass. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: By statutory notice of deficiency dated October 10, 1991, respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Sec.
Sec. Sec. Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653 6653 6653(b)(2)
6661
(b)(1)(A)
(b)(1)(B)
1984
$ 45,875 $ 22,938
-- --
[1]
$ 11,469
1985
181,519
90,760
-- --
[1]
45,380
1986
7,916
-- $ 5,937
[1]
--
1,979
1987
48,600
-- 36,450
[1]
--
12,150
By statutory notice of deficiency dated November 7, 1991, respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)
6653(b)(2)
6661
1982
$ 60,794
$ 30,397
[1]
$ 15,199
1983
66,535
33,268
[1]
16,634
*4 The issues for decision are: (1) Whether the funds Robert E. Sympson removed from Olga Roderick's checking account were loans or unreported embezzlement income. We hold that they are unreported embezzlement income. (2) Whether petitioners are entitled to a deduction in 1987 for restitution payments. We hold that they are not. (3) Whether petitioners are liable for additions to tax for fraud pursuant to section 6653(b)[1] for tax years 1982 through 1986. We hold that Elizabeth Sympson is not, but that the Estate of Robert E. Sympson is. (4) Whether petitioners are liable for additions to tax for negligence pursuant to section 6653(a) for tax year 1987. We hold they are. (5) Whether respondent is precluded from assessing tax for the years 1982 through 1986 due to the running of the period of limitations. Because of our holding in issue 3 above, we hold that she is not. (6) Whether Elizabeth Sympson is entitled to innocent spouse relief under section 6013. We hold that she is not. (7) Whether petitioners are subject to substantial understatement penalties pursuant to section 6661 for tax years 1982 through 1987. We hold that they are. *5 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, attached exhibits, and supplemental stipulation of facts are incorporated herein by this reference. At the time the petition herein was filed, Mrs. Sympson (hereinafter petitioner wife) resided in Santa Teresa, New Mexico. Robert E. Sympson (hereinafter decedent) died May 29, 1991, and Mrs. Sympson was qualified as the Personal Representative of his estate on July 29, 1991. Mr. and Mrs. Sympson were married and filed joint Federal income tax returns for 1982 through 1987. Decedent graduated from Texas Western College in 1955 with a bachelor of business administration degree. After serving a short term in the Army, decedent moved to Texas, becoming the credit manager for Glidden Paint Co. in 1958. In 1959, decedent moved to El Paso to become the bookkeeper for the Times, an El Paso newspaper owned by Dorrance D. Roderick. In 1963, decedent was promoted to business manager for the Times. In 1973, when the Times was sold to Gannett, decedent became self-employed. Decedent began to buy and sell land, sometimes developing it. Decedent had a number of different partners in these ventures. In *6 1980, Mr. Roderick was ill and decided he needed assistance with his finances. He hired decedent to act as his financial manager in March 1980 for $ 25,000 per year. Mr. Roderick did not pay decedent anything until July 1980, then only paying decedent $ 1,000 a month. Decedent was concerned about being properly paid. He did not want to upset Mr. Roderick because of his illness, so he asked Mrs. Roderick, her daughter, and her son-in-law to sign an agreement that evidenced the debt owed by Mr. Roderick, thus assuring decedent's future payment. Mr. Roderick died on March 28, 1981. Mrs. Roderick, who was financially naive and elderly, [2] continued decedent's employment until July 1987. From 1982 through July 1987, decedent removed funds from Mrs. Roderick's checking account in a manner that, though unsophisticated, remained undetected by Mrs. Roderick. [3] Even though decedent was an authorized signatory on Mrs. Roderick's account, she would sign blank checks and leave *7 them with decedent to pay bills whenever she left town for any period of time. In addition to paying those bills, decedent also used the checks to transfer funds to himself. Decedent made arrangements for the bank statements to be sent to his office, so that he could not only reconcile the bank account but also keep Mrs. Roderick from seeing any incriminating checks. Decedent did not sign any notes or any other agreements to acknowledge the fact that he owed her any of the funds that he removed from her account. No oral agreements were made between decedent and Mrs. Roderick. Decedent admitted to the Internal Revenue agent that he made no loan payments to Mrs. Roderick over the 6-year period. Because of her inexperience in financial matters and trust of decedent, a longtime family friend, Mrs. Roderick failed to ask him questions that would have exposed the unauthorized transfer of funds. As stipulated, [4] the following amounts were transferred from Mrs. Roderick's checking account without her permission: Total received
[1]Total unreported by decedent from
by decedent on
Year
Mrs. Roderick
Form 1040
1982
$ 206,250
$ 145,000
1983
195,865
107,640
1984
192,944
109,444
1985
348,233
250,233
1986
203,350
105,350
1987
230,005
181,005
Total
1,376,647
898,672
*8 In 1987, Mrs. Roderick's grandson, Evan Roderick (hereinafter Evan), discovered the misappropriation of funds. Evan had made a bad investment. While investigating the gentleman with whom he had made the investment, Evan found evidence that his grandmother had purportedly made an investment with that same gentleman. Finding this difficult to believe, Evan, along with Robert Williams (hereinafter Williams), an attorney, met with Mrs. Roderick to ask her if she had made or authorized such an investment. Mrs. Roderick confirmed Evan's suspicions, by stating she had not made or authorized decedent to make such an investment. She also said that she *9 was concerned because decedent had not communicated with her for several months regarding the status of her accounts. At that point, Mrs. Roderick gave Evan and Mr. Williams written permission to obtain all her records from decedent. Decedent did not supply the requested items until 2-3 weeks after Evan and Mr. Williams had made the initial request and a written followup request. These checking account records were used to reconstruct the amounts that decedent removed from Mrs. Roderick's checking account. Decedent possessed no independent records that recorded the amounts removed from Mrs. Roderick's checking account. After Mrs. Roderick was convinced that decedent had embezzled her money, she demanded repayment. Upon decedent's determining he could not pay Mrs. Roderick in full, decedent and petitioner wife gave Mrs. Roderick a security interest in all their real property except the family ranch. On advice of his attorney, decedent and petitioner wife individually declared bankruptcy [5] after Mrs. Roderick filed civil suit for repayment. Decedent was not criminally charged with embezzlement. The record does not reflect the reasons why he was not so charged. Decedent and *10 petitioner wife made no direct payments to Mrs. Roderick to restore the embezzled funds. In 1988, the bankruptcy estate restored some portion of the embezzled funds. Decedent and petitioner wife purchased homes five times in their years together. Their first home was purchased for $ 10,000 in 1953, their second home was bought for $ 20,000, their third home was purchased in 1963 for $ 35,000 and sold for $ 135,000, their fourth home was bought for $ 135,000 and sold in 1985 for $ 235,000, and their fifth homestead, a ranch purchased in late 1984, was worth $ 500,000 on January 1, 1986. [6]
At the time they declared bankruptcy, decedent and petitioner wife *11 owned a number of properties, among them: two Thunderbird properties, one-half interest in the Basset property, six undeveloped lots, and one-half interest in one developed lot and movie theater property in Ruidoso, New Mexico, and the Woodland property. They did not indicate when these properties were purchased or in what state of development these properties were prior to 1982, when decedent began embezzling money from Mrs. Roderick. OPINION Issue 1. Embezzlement Income or Loans
Petitioners assert that the transfers were loans, and base their argument on the fact that decedent, prior to his death, asserted that the funds were loans. [7] Decedent claimed he intended to repay all funds to Mrs. Roderick. Respondent asserts that the funds were embezzlement income. As such, respondent contends that decedent and petitioner wife were required to report the income in the year *12 it was received. Petitioners bear the burden of proving that respondent's determinations in the notice of deficiency are erroneous. Rule 142(a). It is well settled that money obtained by means of embezzlement constitutes income to the perpetrator. Money received without recognition of an obligation to repay and without restriction as to its disposition is taxable when it is received, even though the taxpayer may be required to restore the money later. James v. United States, 366 U.S. 213, 219-220 (1961); North American Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932); Mais v. Commissioner, 51 T.C. 494, 498-499 (1968). Whether the individual receives the money lawfully or unlawfully is irrelevant. James v. United States, supra.Contrary to petitioners' contention, there is no requirement that there be a prior judicial determination that an embezzlement has occurred; such determination is within the compass of the Court. [8]
*13 Petitioners have no support for their argument that at the time decedent removed the funds from Mrs. Roderick's account, decedent considered the funds to be loans he intended to repay at a future date, other than self-serving testimony that decedent intended to repay the money. Petitioners argue that decedent fully demonstrated his intent to repay the "loan" by signing and delivering deeds on substantially all his properties to Mrs. Roderick in 1987. However, decedent and petitioner wife did not sign the deeds until after Mrs. Roderick discovered the embezzlement. In contrast, respondent presented evidence from both decedent and Mrs. Roderick that she did not consent to the loans. Mrs. Roderick testified in a deposition in conjunction with decedent and petitioner wife's bankruptcy hearing that she did not give decedent permission to borrow the money. Furthermore, decedent, in his bankruptcy filing, documented that the withdrawals from Mrs. Roderick's account were unauthorized. Respondent's position is further supported by the fact that there were no notes evidencing the loans; nor did decedent keep independent records of the transferred funds, further negating petitioner's *14 loan theory. As Mrs. Roderick's financial manager, decedent knew that notes or some kind of documentation should be drawn up to evidence amounts due from another. To illustrate: in 1981, Mr. Roderick owed decedent approximately $ 25,000. Decedent made certain that there was a writing, signed by interested parties, so that decedent could collect the money he was owed upon the death of Mr. Roderick. When decedent's financial health was at stake for a relatively small amount of money, he made sure there was a writing to evidence the debt. However, in 1982 through 1987, when decedent removed funds of over $ 1 million from Mrs. Roderick's checking account, he drew up no instruments evidencing his debt to Mrs. Roderick. Furthermore, decedent made no loan payments. Decedent, who was responsible for Mrs. Roderick's financial affairs, did nothing to protect her financially. This inaction by decedent, in light of his financial expertise, leads to the conclusion that there is no credible evidence of decedent's intent to repay Mrs. Roderick. Absent a consensual agreement between the party providing the money and the party receiving it, there can be no support for the contention that *15 the money should be excluded from gross income on a loan theory; therefore, it must be treated as income. Moore v. United States, 412 F.2d 974, 979-980 (5th Cir. 1969). [9] For the above-stated reasons, respondent's determination with respect to the deficiencies due to unreported embezzlement income is sustained. Issue 2. Were Restitution Payments Made in 1987? Petitioners assert that the signing of the deeds to the bulk of their real property in 1987 by decedent and petitioner wife evidenced an obligation to Mrs. Roderick to repay the debt. Because the debt was eventually repaid, those "repayments" are asserted to be deductible in 1987. In other words, petitioners are claiming they do not have to make an actual transfer of assets to deduct the repayment, but only give assurance that payment will be made, and make payment, even in a later year. Respondent asserts that the signing of the *16 deeds was merely to give a security interest in 1987 to Mrs. Roderick for the debt created by decedent's embezzlement. In fact, argues respondent, decedent and petitioner wife did not even treat the property as transferred property. Therefore, respondent contends that the repayments were not deductible until 1988 when the bankruptcy cases were concluded and the assets actually transferred to Mrs. Roderick. Petitioners cite United States v. Merrill, 211 F.2d 297 (9th Cir. 1954), as authority for the proposition that a promise to pay is sufficient to make the repayment deductible. The Court of Appeals for the Ninth Circuit in Merrill, did, in fact, support this proposition. However, Merrill can be factually distinguished from the case at hand. In Merrill, the taxpayer husband erroneously paid himself $ 20,000 in executor's fees rather than $ 10,000.[10] Before the end of the second year in which he had already paid himself $ 7,500, [11] an Internal Revenue agent informed the taxpayer of his error. The taxpayer then made entries to set up an account receivable for $ 10,000 on the estate's books and an account payable for a comparable amount *17 on his personal books. The taxpayer did not repay the $ 10,000 for 2 years. The Court of Appeals for the Ninth Circuit held that the taxpayer did not have to recognize the $ 7,500 as income because it was outside of the "claim of right" rule. In addition, the court specifically stated that the income in that case was not embezzlement income. United States v. Merrill, supra at 303. For the preceding reasons the analysis in Merrill does not apply to the instant case. *18 A case that more closely parallels the instant case is Mais v. Commissioner, 51 T.C. 494 (1968). In Mais, the taxpayer was employed as a stock transfer clerk by Bache & Co., a stockbrokerage firm. The taxpayer embezzled and then sold securities he obtained from his employer. In that same year, the employer discovered the missing securities and began an investigation. The taxpayer, upon learning of the investigation, independently confessed the embezzlement to the district attorney. He told authorities that he wanted to repay the proceeds of the securities, thus acknowledging the debt he owed in the same year as the embezzlement. Some of the proceeds were repaid immediately. On advice of his attorney, the taxpayer did not repay all that was owed in that tax year; instead the taxpayer finally made full restitution 2 years later. In that case, the taxpayer argued that he did not receive income because there was an acknowledged equivalent obligation to repay. We held: "The only relief available to the embezzler is to deduct from income of any year any amount repaid in such year in restitution." Id. at 499 *19 (emphasis added). In the instant case decedent embezzled money from 1982 until mid-1987. Petitioners assert that the promise to repay, evidenced by the security interest given in 1987, was enough to make the repayment deductible in 1987. Respondent asserts that no actual repayment was made; the security interest evidenced only some vague promise to repay something -- no agreement was reached in 1987 fixing the amount or terms of the repayment. Based on our holding in Mais, we conclude that petitioners can only deduct restitution payments in the year an actual repayment is made. Our analysis now turns to the question of whether decedent's and petitioner wife's signatures on the deeds of the properties constituted an actual repayment of embezzled funds in 1987. Under Texas law, [12]a conveyance of real property must be in writing and must be signed and delivered by the seller. Tex. Prop. Code Ann. sec. 5.021 (West 1984). The intention of the seller is the factor which determines whether a delivery has occurred. Williams v. Anderson, 414 S.W.2d 731 (Tex. Ct. App. 1967). If a deed is intended to be merely security for payment *20 of a debt, it will be treated as a mortgage. Sammons v. Brunson, 25 S.W.2d 685 (Tex. Ct. App. 1930). Petitioner wife testified that neither she nor decedent intended for the signing of the deeds to operate as a conveyance. Instead they intended that the deeds reflect a security interest or mortgage to Mrs. Roderick. This testimony was augmented by their bankruptcy filings, which repeatedly stated that certain properties were deeded to Mrs. Roderick in late 1987 as security for a purported debt. Based on Texas law, we find that legal delivery of the deeds to Mrs. Roderick did not occur because decedent and petitioner wife did not intend to convey the property in fee simple to Mrs. Roderick. Since the property was not conveyed, but merely pledged as a security interest, no actual repayment of the debt occurred. Accordingly, we find that petitioners are not entitled to a 1987 deduction against the embezzlement debt for the *21 properties transferred to Mrs. Roderick as a security interest. Issue 3. Addition to Tax -- Fraud
Respondent determined that decedent is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1982-85 and section 6653(b)(1)(A) and (B) for 1986-87. For 1982-85 section 6653(b)(1) provides that if any part of any underpayment of tax is due to fraud, the addition to tax under this section shall be an amount equal to 50 percent of the underpayment. Moreover, section 6653(b)(2) adds to the tax an amount equal to 50 percent of the interest due on any part of the underpayment attributable to fraud. Pursuant to the terms of section 6653(b), the fraud addition to tax imposed by section 6653(b)(1) attaches to the entire underpayment even if only a portion of it is actually attributable to fraud. Mensik v. Commissioner, 328 F.2d 147, 150 (7th Cir. 1964), affg. 37 T.C. 703 (1962); Breman v. Commissioner, 66 T.C. 61 (1976). For 1986-87 section 6653(b)(1)(A) provides for an addition to tax in an amount equal to 75 percent of the portion of the underpayment which is attributable *22 to fraud. Moreover, section 6653(b)(1)(B) adds to the tax an amount equal to 50 percent of the interest due on the portion of the underpayment attributable to fraud. For purposes of those provisions, section 6653(b)(2) states that if the Secretary establishes any portion of an underpayment is due to fraud, the entire underpayment is treated as fraudulent, unless the taxpayer proves some portion of the underpayment is not due to fraud. Petitioners assert that when decedent was asked about undisclosed tax liabilities during the bankruptcy proceeding, he repeatedly denied such liability. Petitioners state that it was financially in decedent's best interest to report such liability at that time. Petitioners further assert that since decedent did not report the tax liability at that time, he must not have believed one was due and thus did not have an intent to fraudulently avoid Federal income tax. The existence of fraud is a question of fact to be determined on the basis of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). The principal issue *23 in ascertaining whether fraud is present is whether there has been an intentional wrongdoing on the part of the taxpayer with the specific intent to evade a tax known or believed to be properly owing. Bradford v. Commissioner, 796 F.2d 303 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The burden of proof with respect to the fraud issue is upon the Commissioner, to prove, by clear and convincing evidence, that some part of the underpayment of tax was due to fraud with an intent to evade tax. Sec. 7454(a); Rule 142(b); Imburgia v. Commissioner, 22 T.C. 1002 (1954). Where fraud is determined for more than 1 year, the Commissioner's burden applies individually to each year. Barbuto v. Commissioner, T.C. Memo. 1991-342 (citing Estate of Stein v. Commissioner, 25 T.C. 940, 959-963 (1956), affd. sub nom. Levine v. Commissioner, 250 F.2d 798 (2d Cir. 1958)). To satisfy her burden of proof, the Commissioner must show two things: *24 (1) An underpayment exists; and (2) the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). The first element requires the Commissioner to establish the existence of an underpayment of tax. Section 6653(c) defines underpayment in essentially the same manner as a "deficiency" to mean the amount by which the tax imposed exceeds the amount of tax shown by the taxpayer on his return. Sec. 6211. To prove an underpayment, respondent cannot satisfy her burden by relying solely on petitioners' failure to discharge their burden of proving error in her determination of the deficiencies. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). Here, respondent determined the unreported income from third-party information and inquiries of decedent. The Internal Revenue agent (hereinafter the agent) began her audit by interviewing decedent and specifically asking him the source of his funds for the years in question. *25 Decedent admitted to the agent that he had received funds from Mrs. Roderick. Respondent has shown by decedent's admission that the only possible source of the funds is Mrs. Roderick, and since we hold that those funds are taxable embezzlement income, respondent has established that decedent underreported his income for the tax years in question. Respondent recalculated decedent's and petitioner wife's income for each of the years in question, including the underreported income, arriving at an underpayment. Therefore respondent has discharged her burden of proof regarding the first element. The second element requires the Commissioner to prove fraudulent intent on the part of decedent. Fraud will never be presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. Courts have developed *26 various factors or "badges" which tend to establish fraud. Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). These include: (1) A pattern of understatement of income; (2) inadequate records; (3) concealment of assets; (4) income from illegal activities; (5) attempting to conceal illegal activities; (6) implausible or inconsistent explanations of behavior; and (7) dealing in cash. Bradford v. Commissioner, 796 F.2d 303, 308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; McGee v. Commissioner, 61 T.C. 249, 260 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). These "badges" of fraud exist in this case. The first is a pattern of understatement of income. In evidence are facts which, taken together, establish a pattern of substantial and intentional understatements of taxable income of $ 145,000 in 1982, $ 107,640 in 1983, $ 109,444 in 1984, $ 250,233 in 1985, $ 105,350 in 1986 and $ 181,005 in 1987. Although fraud cannot be inferred from the mere understatement of income, consistent and substantial underreporting is evidence of fraud. Webb v. Commissioner, 394 F.2d 366, 379 (5th Cir. 1968), *27 affg. T.C. Memo. 1966-81. Repeated understatements in successive years, when coupled with other circumstances showing an intent to conceal or misstate taxable income, present a basis on which we may properly infer fraud. Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Anderson v. Commissioner, 250 F.2d 242, 250 (5th Cir. 1957), affg. on this issue T.C. Memo. 1956-178. Other badges of fraud are also present in this case. Decedent kept incomplete and inaccurate records, [13] attempted to make implausible explanations regarding his behavior, [14] concealed his illegal activities regarding the embezzlement, and intended to mislead; these are all badges tending to establish fraud. *28 We find that decedent willfully and knowingly intended to evade the payment of tax for the years 1982-86 and therefore is liable for additions to tax under section 6653(b). Thus, we sustain the addition to tax for fraud under section 6653(b)(1) and (2) for 1982-85 and section 6653(b)(1)(A) and (B) for 1986 as respondent determined. We also find that the full amount of the underpayment for the years 1982-86 is attributable to decedent's fraud at the time he filed his return. Respondent has conceded that petitioner wife is not liable for fraud. For the tax year 1987, decedent admitted his embezzlement in this year and was in the process of negotiating a settlement with Mrs. Roderick. Because he was negotiating such settlement we find that he did not exhibit the state of mind required to find fraud. For this reason we hold that petitioners are not liable for fraud for 1987. Issue 4. Addition to Tax -- Negligence
In her answer, respondent asserted that petitioners are liable in the alternative for an addition to tax under section 6653(a)(1)(A) and (B) for 1987. For 1987, section 6653(a)(1)(A) provides that if any part of the underpayment is due to negligence or disregard *29 of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Likewise section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. Negligence under section 6653(a) is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964)). Petitioner bears the burden of proof regarding the additions to tax under section 6653(a). Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). In regard to the embezzlement issue, we have held petitioners should have included that income in their Federal income tax returns. Petitioners did not have a legitimate reason for excluding this income nor did they disclose, upon filing their Federal tax return, the fact that they were omitting *30 the income. On this record petitioners were negligent in not including the embezzlement income, and we sustain respondent's determination that petitioners are liable for the additions to tax under section 6653(a)(1)(A) and (B) for 1987. Issue 5. Statute of Limitations
Petitioners contend that respondent is precluded from assessing tax for the years 1982 through 1986 due to the running of the period of limitations. We disagree. Section 6501(c)(1) provides for the assessment of tax at any time in the case of a fraudulent return. We have found fraud on the part of decedent, and accordingly, the period for assessment remains open for petitioners. Benjamin v. Commissioner, 66 T.C. 1084, 1101 (1976), affd. 592 F.2d 1259 (5th Cir. 1979); Vannaman v. Commissioner, 54 T.C. 1011, 1017-1018 (1970). Issue 6. Innocent Spouse Relief
We must next decide whether petitioner wife qualifies for innocent spouse relief for tax years 1982 through 1987. When a husband and wife file a joint return, each is jointly and severally liable for the amount of tax due. Sec. 6013(d)(3). However, section *31 6013(e) provides an exception. A spouse is relieved of joint liability if he or she proves that: (1) A joint return was made for the taxable year; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) the innocent spouse did not know, and had no reason to know, of the substantial understatement when he or she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold the innocent spouse liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e); Flynn v. Commissioner, 93 T.C. 355, 359 (1989). Petitioner wife has the burden of proof regarding each requirement of the section. Rule 142(a); Russo v. Commissioner, 98 T.C. 28, 31-32 (1992). Failure to prove any one of the requirements will preclude the spouse from relief. Purcell v. Commissioner, 826 F.2d 470, 473 (6th Cir. 1987), affg. 86 T.C. 228 (1986); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), *32 affd. 992 F.2d 1132 (11th Cir. 1993); Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989). Because we find that petitioner wife has failed to prove the fourth requirement -- it would be inequitable to hold petitioner wife jointly and severally liable for the taxes in issue -- as discussed below, we will not consider the three remaining requirements. See Purcell v. Commissioner, supra.In determining whether it is inequitable to hold petitioner wife liable for these deficiencies in tax, we consider whether she significantly benefited, directly or indirectly, from the items omitted from gross income. Belk v. Commissioner, 93 T.C. 434, 440 (1989); sec. 1.6013-5(b), Income Tax Regs. Normal support is not a significant benefit for purposes of analyzing the equity of granting innocent-spouse relief. Estate of Krock v. Commissioner, supra at 678; Purcell v. Commissioner, 86 T.C. at 242; sec. 1.6013-5(b), Income Tax Regs. Unusual support or transfers of property to the spouse are a benefit and are taken into consideration. *33 Estate of Krock v. Commissioner, supra at 679. Petitioner wife presented evidence predominantly of decedent's and petitioner wife's spending and lifestyle for the years in issue but presented little evidence of their spending and lifestyle prior to 1982. However, the record does show how they used the unreported income to finance and continue an extravagant and lavish lifestyle and living accommodations. For example, in 1984, petitioners purchased a 25-acre ranch with stables, worth $ 500,000 in 1986. Concurrent to buying the ranch, petitioners sold a home for $ 235,000. With the purchase of the ranch, they doubled their home investment and tripled their mortgage payments. In 1986, petitioners purchased two new Jaguar automobiles for $ 25,000 apiece, while owning a 1983 Jeep Wagoneer and a 1968 Oldsmobile convertible with a combined value of over $ 20,000. In early 1987, they spent between $ 50,000 and $ 75,000 to build a polo field on their ranch. Decedent and petitioner wife owned a number of horses and stabled 30 more for fees that ranged to $ 100 per month. Furthermore, during the years in question, petitioners employed a maid. Decedent *34 gave petitioner wife an $ 8,000 diamond ring and a fur coat. They also owned a number of properties. They vacationed in the Bahamas, where they bought a piece of real estate. Both petitioner wife's and decedent's names were on most of the deeds to the real estate. Decedent paid all mortgage, utility, automobile, and gasoline bills, while petitioner wife was responsible only for the groceries, maid, and miscellaneous expenditures. Petitioner wife expended from a low of $ 2,000 a month in 1982, to progressively higher amounts each year, to reach a high of $ 5,400 a month in 1986. [15]
Petitioners concede that they did have all of this, but contend that they lost everything in the bankruptcy filing. However, for 6 years petitioner wife was able to enjoy the lifestyle engendered by the fruits of the embezzlement. The family could not have developed *35 and kept a high standard of living during those 6 years if decedent had not been embezzling money from Mrs. Roderick. Petitioner wife has not carried her burden of proof and thus is not an innocent spouse as defined in section 6013(c). Because petitioner wife significantly benefited from the understatement of income for the years in issue it is not inequitable to hold her liable for the deficiency. Issue 7. Addition to Tax -- Substantial Understatement
The remaining issue is whether petitioners are liable for the addition to tax pursuant to section 6661. This section provides that if there is a substantial understatement of income tax, there shall be added to the tax an amount equal to 25 percent of the amount of any underpayment attributable to such understatement. See sec. 6661(a). Petitioners bear the burden of proving that respondent's determinations as to the underlying deficiency and the addition to tax under section 6661(a) are erroneous. Rule 142(a). A substantial understatement of income tax exists in a year if the tax understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement *36 is the difference between the amount required to be shown on the return and the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner92 T.C. 501 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). The amount of the understatement on which the addition to tax is based will be reduced by that portion of the understatement which is attributable either to (1) a position adopted by the taxpayer for which substantial authority exists, sec. 6661(b)(2)(B)(i), or (2) any item with respect to which the taxpayer has made adequate disclosure of the relevant facts in the tax return or any statement attached thereto, sec. 6661(b)(2)(B)(ii). Petitioners did not have substantial authority for their positions in any year at issue. They did not adequately disclose any facts pertaining to the understated gross receipts on any of the tax returns as filed, or on any statements attached to such returns. Therefore, if a substantial understatement exists for any year after petitioners' tax liability is recomputed based on the foregoing under Rule 155, we hold they will be liable for the section 6661 addition to tax *37 for that year. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. 50 percent of the interest due on the portion of the underpayment that is attributable to fraud.↩
1. 50 percent of the interest due on the portion of the underpayment that is attributable to fraud.↩
1. All section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. Mrs. Roderick was 76 years old in 1981.↩
3. There is some evidence that indicates that $ 2 million in bearer bonds was misappropriated by decedent. Respondent has not included the value of those bonds in her determination, so we will not address that issue.↩
4. The unreported amounts as stipulated are different than the amounts on the deficiency notices. For this reason, a Rule 155 computation will be made.↩
1. The difference was reported by petitioners as miscellaneous income-property management fees subject to self-employment tax. There was no consensus regarding decedent's salary. Mrs. Roderick said it was $ 48,000 per year, but decedent reported more than $ 48,000 each year on his tax returns. Nevertheless, we are concerned only with the amounts decedent removed from Mrs. Roderick's checking accounts that were in excess of the amounts actually reported on his income tax returns.↩
5. Decedent first declared bankruptcy and then petitioner wife; the two bankruptcy cases were later joined and settled in 1988.↩
6. The record does not reflect the full purchase price of the ranch.↩
7. This assertion was included in petitioners' individual and joint statements filed in conjunction with their declaration of bankruptcy.↩
8. See, e.g., Solomon v. Commissioner, T.C. Memo. 1982-603, affd. 732 F.2d 1459 (6th Cir. 1984); Beaton v. Commissioner, T.C. Memo. 1980-413, affd. 664 F.2d 315 (1st Cir. 1981); Nuckols v. Commissioner, T.C. Memo. 1970-308↩.
9. See also Kreimer v. Commissioner, T.C. Memo. 1983-672↩.
10. The estate was located in a community property state. For this reason taxpayer husband was entitled to one-half of the estate as a matter of law. When the estate was adjudicated, the judge allowed a $ 20,000 executor's fee as to the entire estate. The husband paid himself this amount from the half of the estate that was segregated as inherited from his wife. Since one-half of the estate already belonged to the husband, only $ 10,000 was actually a deductible expense against that half of the estate.↩
11. The taxpayer had paid himself $ 12,500 the previous year.↩
12. The property in question is located in Texas.↩
13. Decedent's embezzlement income had to be reconstructed through Mrs. Roderick's canceled checks, not decedent's own books and records.↩
14. E.g., decedent claimed that the money acquired from Mrs. Roderick's accounts was money loaned by her to him, rather than embezzlement income.↩
15. These amounts are calculated after $ 500 per month life insurance payments and a one-time $ 25,000 capital improvement were removed from petitioner wife's expenditures.↩