T.C. Memo. 1996-352

UNITED STATES TAX COURT

ESTATE OF ROBERT E. SYMPSON, DECEASED, ELIZABETH C. SYMPSON
PERSONAL REPRESENTATIVE AND ELIZABETH C. SYMPSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]

Docket No. 971-92.                          Filed July 31, 1996.

<u>Bruce Hallmark</u>, for petitioners.

<u>Steven B. Bass</u>, for respondent.

SUPPLEMENTAL MEMORANDUM OPINION

PARR, <u>Judge</u>:  This case is before the Court on remand from

the Court of Appeals for the Tenth Circuit.  <u>Estate of Sympson v.</u>

<u>Commissioner</u>, 54 F.3d 787, 75 AFTR 2d 95-2255, 95-1 USTC par.

50,276 (10th Cir. 1995), affg. in part and revg. in part without

_____

      *  This opinion supplements our opinion in <u>Estate of Sympson</u>
<u>v. Commissioner</u>, T.C. Memo. 1994-2.

published opinion T.C. Memo. 1994-2. We held therein that petitioner Elizabeth C. Sympson was not eligible for relief under section 6013(e)[1] as an "innocent spouse". The Court of Appeals held that we erred in finding that it would not be inequitable to hold Mrs. Sympson liable for the tax deficiency and remanded the case for further proceedings.

To qualify for innocent spouse relief, a taxpayer must meet all four of the requirements of section 6013(e). It is undisputed that Mrs. Sympson had shown that she filed a joint return and that there was a substantial understatement of tax attributable to grossly erroneous items of her spouse (i.e., unreported embezzlement income). Since we found that Mrs. Sympson did not qualify for relief because she failed to meet the fourth requirement, we did not consider whether she met the third test; i.e., whether she had proven that she did not know and did not have reason to know that there was a substantial understatement on the returns. Sec. 6013(e)(1)(C). The Court of Appeals therefore remanded the case for further findings of fact on this issue.

The tax years in issue are 1982 through 1987. Beginning in 1982, and continuing to July 1987, Mrs. Sympson's husband embezzled $898,642 from an elderly widow named Olga Roderick and

---

[1] All section references are to the Internal Revenue Code in effect for the taxable period under consideration.

failed to report it in income. The factors we analyzed included the following: During the years in issue Mr. and Mrs. Sympson purchased a 25-acre ranch and home valued in 1986 at $500,000, thereby doubling their home investment and tripling their mortgage payments; they purchased two new Jaguars; they built a $50,000 to $75,000 polo field on their ranch; and they employed a maid. Mr. Sympson gave Mrs. Sympson an $8,000 diamond and a $3,000 fur coat.

The Court of Appeals held that even assuming Mrs. Sympson had benefited substantially, that was not a dispositive factor, considering that she and her husband were later forced into bankruptcy and some of their properties (not including the $500,000 ranch) were turned over to the embezzlement victim. The Court of Appeals said: "Because a determination of equity is based on all the facts and circumstances, we hold that under these circumstances it would be inequitable as well as unconscionable to hold Mrs. Sympson liable for these deficiencies." Estate of Sympson v. Commissioner, 75 AFTR 2d at 95-2257, 95-1 USTC par. 50,276, at 88,021.

The parties stipulated that of the amounts received by Mr. Sympson from Olga B. Roderick's accounts, $145,000, $107,640, $109,444, $250,233, $105,350, and $181,005 for the 1982, 1983, 1984, 1985, 1986, and 1987 taxable years, respectively, were not reported on petitioners' income tax returns.

We now turn, as instructed, to the question of whether Mrs. Sympson has established that she neither knew nor had reason to know that the returns she signed contained a substantial understatement of tax.  Id.; sec. 6013(e)(1)(C).

Respondent agrees, and we so find, that Mrs. Sympson had no actual knowledge of the embezzlement before her husband was caught.  Thus, the question is whether she had reason to know of the understatements on the returns for tax years 1982 through 1986, and whether she had actual knowledge or reason to know for tax year 1987.

In deciding whether Mrs. Sympson "had reason to know" of the substantial understatements when she signed the returns, we take into account:  (1) her level of education; (2) her involvement in the family's business and financial affairs; (3) the presence of expenditures that appear lavish or unusual when compared with the family's past levels of income, standard of living, and spending pattern; and (4) the culpable spouse's evasiveness and deceit concerning their finances.  Friedman v. Commissioner, 53 F.3d 523, 531-532 (2d Cir. 1995) (citing Hayman v. Commissioner, 992 F.2d 1256, 1261 (2d Cir. 1993), affg. T.C. Memo. 1992-228), affg. in part and revg. in part T.C. Memo. 1993-549.  The foregoing factors are considered "because, ordinarily, they predict what a prudent person would realize regardless of the other spouse's

evasiveness or deceit." Bliss v. Commissioner, 59 F.3d 374, 379 (2d Cir. 1995), affg. T.C. Memo. 1993-390.

We feel somewhat constrained in our findings, because, in addition to stating that it would be unconscionable to hold Mrs. Sympson liable, the Court of Appeals commented on some of the evidence which would bear on our analysis. For instance, we would ordinarily have given weight to the Sympsons' increasing wealth and expenditures during the years in issue in contrast to the amounts reported on the income tax returns. From 1982 through 1987, the Sympsons reported taxable income as follows:

| Year | Amount |
| --- | --- |
| 1982 | ($22,561) |
| 1983 | 32,266 |
| 1984 | 25,111 |
| 1985 | -0- |
| 1986 | -0- |
| 1987 | -0- |

Ordinarily, such a disparity would be a factor putting one on notice and would support a finding that a spouse had reason to know of an understatement.

We feel instructed, however, by the court's finding that "there is substantial evidence that the lifestyle of the Sympsons during this period did not change." Estate of Sympson v. Commissioner, 75 AFTR 2d at 95-2257, 95-1 USTC par. 50,276, at 88,021. The Court of Appeals also said:

> In contrast to this evidence [i.e. of increasing expenditures], Mrs. Sympson testified that, while the family lifestyle gradually improved each year

> throughout the marriage, including the years of
> defalcation, there was no dramatic change. * * *
> Importantly, there was evidence that the Sympsons had
> sufficient cash flow from sources other than the
> unreported income to more than cover their family
> expenditures during this period. [Id. at 95-2257, 95-1
> USTC par. 50,276, at 88,020-88,021.]

So instructed, we conclude that the Court of Appeals would find that the increasing expenditures would not have given Mrs. Sympson reason to know. Therefore, we find that, for tax years 1982, 1983, 1984, 1985, and 1986, Mrs. Sympson did not have reason to know of the substantial understatement.

For 1987, however, another factor is present. Mr. Sympson's thefts were discovered in July of that year. Mrs. Sympson became aware of the problem soon after, when her father told her that all the furniture was gone out of Mr. Sympson's office, and she learned that he had been fired. In August or September 1987, Robert asked her to sign deeds on various properties, telling her that there was a problem with Mrs. Roderick's funds. In early 1988, Mrs. Sympson was served with a copy of a State court suit for more than $14 million. She read the complaint, which accused her husband of stealing from Mrs. Roderick.

In the spring of 1988, Mrs. Sympson was told by attorneys that there could be a tax problem with the misappropriated funds. When her husband told her he would treat the withdrawals from Mrs. Roderick's accounts as loans on their income tax return, Mrs. Sympson accepted that without further question, even though

there were no loan documents and the supposed "lender" had another view of the transfers. Mrs. Sympson signed the 1987 return on October 17, 1988. By that time she knew that her husband had been accused of theft and fired, and that he and she were being sued for millions of dollars. Moreover, a lawyer had explicitly warned her of potential tax problems. The joint income tax return she signed showed only $49,000 received from Olga Roderick in 1987.

Generally, the question of whether a spouse knew or had reason to know of a substantial understatement is governed by whether a "reasonably prudent taxpayer under the circumstances of the spouse at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted." Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. T.C. Memo. 1988-63; see Griner v. Commissioner, 951 F.2d 360 (9th Cir. 1991), affg. without published opinion T.C. Memo. 1990-301; Bokum v. Commissioner, 94 T.C. 126, 148 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

Mrs. Sympson is a college graduate who had owned and operated an art gallery. She was not afraid of her husband or mistreated by him. Trust does not eliminate a spouse's duty to inquire when circumstances indicate further inquiry is necessary. Hayman v. Commissioner, supra at 1262. We believe a reasonably prudent person in Mrs. Sympson's circumstances would have

inquired further and/or refused to sign the return.  Mrs. Sympson has not carried her burden of showing that she neither knew nor had reason to know of the substantial understatement on the 1987 return when she signed it.

In light of the above, we hold that Mrs. Sympson is entitled to be relieved of liability as an innocent spouse for tax years 1982 through 1986, and that she is not so entitled for 1987.

<u>An appropriate order and decision will be entered</u>.