T.C. Memo. 1997-407


UNITED STATES TAX COURT


DEBRA L. STRECK AND DONALD W. STRECK, Petitioners
<u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 25246-95.                Filed September 15, 1997.


Debra L. Streck and Donald W. Streck, pro sese.

<u>Joseph P. Grant</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows:

| Year | Deficiency | Additions to Tax | | |
|------|-----------|------------------|---|---|
| | | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| 1983 | $142,520 | $71,260 | 50 percent of the interest due on $142,520 | $35,630 |
| 1984 | 369,494 | 184,747 | 50 percent of the interest due on $191,310 | 92,374 |
| 1985 | 543,404 | 271,702 | 50 percent of the interest due on $412,774 | 135,086 |

| Year | Deficiency | Additions to Tax | |
|------|-----------|------------------|---|
| | | Sec. 6653(a)(1)(A) | Sec. 6653(a)(1)(B) |
| 1986 | $111,494 | $5,575 | 50 percent of the interest due on $111,494 |

Respondent's determination was based on the following items: Unreported gross income;[1] disallowance of a net operating loss carryover;[2] allowance of a deduction for two-earner married couples;[3] an increase in capital gains;[4] and disallowances of various deductions for business losses and expenses.[5]

---

[1]Respondent determined that petitioners had unreported gross income of $384,750, $382,620, and $825,548 in 1983, 1984, and 1985, respectively.

[2]Respondent disallowed $88,236 of petitioners' 1983 net operating loss carryover deduction.

[3]Respondent allowed a deduction for two-earner married couples of $120 for 1983 pursuant to sec. 221.

[4]Respondent determined an increase in petitioners' capital gains of $6,636 for 1983.

[5]Respondent disallowed deductions claimed by petitioners for
(continued...)

Petitioners concede the adjustments made by respondent for unreported gross income, the allowance of the two-earner deduction, and the increase to capital gains. Petitioners also concede that Mr. Streck is liable for the additions to tax under section 6653(b)(1)[6] and (2) for the taxable years 1983, 1984, and 1985, and agree with respondent that the addition to tax under section 6653(b)(2) is applicable only to the tax attributable to unreported income. Respondent concedes that Mrs. Streck is not liable for the additions to tax under section 6653(b)(1) and (2) for any of the years at issue.

The issues remaining for decision are: (1) Whether respondent is bound by an alleged settlement agreement for the years at issue; (2) whether petitioners are entitled to deductions for losses they claimed were sustained by Double D Ranch, Inc., an S corporation; (3)whether Mrs. Streck is entitled to innocent spouse relief pursuant to section 6013(e); (4) whether petitioners are liable for the addition to tax pursuant

_____

[5](...continued)
the following items: Business expenses in the amount of $42,500 for 1984; legal and professional fees in the amount of $16,014 for 1984; losses related to petitioners' ownership of Double D Ranch, Inc., an S corporation, in the amounts of $200,331, $255,302, and $229,232 for 1984, 1985, and 1986, respectively; and real estate taxes in the amount of $22,994 for 1985. Respondent allowed an increase in expenses related to legal and professional fees in the amount of $2,848 in 1985.

[6]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

to section 6653(a)(1)(A) and (B) for negligence or intentional disregard of rules or regulations for the year 1986; and (5) whether petitioners are liable for the addition to tax pursuant to section 6661 for substantial understatement of income tax liabilities for the years 1983, 1984, and 1985.[7]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts is incorporated herein by this reference. At the time the petition was filed, Mr. Streck was incarcerated at FMC Lexington, Lexington, Kentucky, and Mrs. Streck resided in Cincinnati, Ohio. Petitioners were married in 1981 and remained married at the time of trial. Petitioners filed joint returns for the years in issue.

During the early 1980's, Mr. Streck owned and operated P.G.D., Inc. (P.G.D.), a company which provided trucking services. P.G.D. incurred substantial operating losses and, in early 1983, ceased operations.

During the years 1983 through 1985, Mr. Streck served as a consultant to a group of companies known as the Walsh Cos. (Walsh), which were headquartered in New Jersey. These companies

---

[7]Petitioners appear to have raised other issues at various times in this case. We need not address these issues since they are either frivolous or were not addressed at trial or on brief by petitioners.

provided trucking services. As a consultant for Walsh, Mr. Streck was paid $500 per day for his services.

While serving as a consultant, Mr. Streck diverted funds from Walsh. Respondent has determined, and petitioners concede, that Mr. Streck received gross income of $384,750 in 1983, $382,620 in 1984, and $825,548 in 1985 that petitioners failed to report on their joint income tax returns for those years.

On June 23, 1988, Mr. Streck was indicted in the U.S. District Court of New Jersey for violations of sections 1341, 1343, 1961, 1962, 1963, and 2314 of title 18 of the United States Code in connection with his diversion of funds from Walsh. On February 27, 1991, Mr. Streck pleaded guilty to fraud under count 11 of the indictment. On November 3, 1988, Mr. Streck was indicted in the U.S. District Court, Southern District of Ohio, for tax evasion under section 7201 for the years 1983, 1984, and 1985 and bankruptcy fraud under section 152 of title 18 of the United States Code. In November 1989, Mr. Streck was convicted on all tax evasion counts and acquitted on all counts of bankruptcy fraud. As a result of these convictions, Mr. Streck was incarcerated from December 8, 1989, to April 15, 1991.[8]

---

[8]Subsequent to Mr. Streck's release from prison, and while he remained on probation, petitioners moved to Knoxville, Tennessee. In connection with the refinancing of a house they purchased in Knoxville, Mr. Streck prepared a false document purporting to be a release of a Federal tax lien. On July 3, 1996, in the Criminal/Circuit Court of Knox County Tennessee, Mr. Streck pleaded guilty to a theft in excess of $60,000 from his
(continued...)

As a result of being liable for much of the debt of P.G.D., Mr. Streck filed a debtor's petition in the U.S. Bankruptcy Court under chapter 7 of title 11 of the United States Code on October 14, 1983. On March 30, 1984, the Bankruptcy Court discharged Mr. Streck from all dischargeable debts.

During 1984, petitioners, acting through Double D Ranch, Inc., constructed a log cabin at an approximate cost of $494,000. Petitioners used the log cabin as their residence. During 1984 and 1985, petitioners also purchased two new 1985 Mercedes Benz automobiles, a $92,000 boat, and four Honda motorcycles. Also, in 1985, petitioners purchased two condominiums in Florida, one on Marco Island for $265,000 and upon its sale, another in Naples for approximately $675,000.

During the years in issue, Mrs. Streck was the sole shareholder of American Carriers, Inc. (ACI), and Mr. Streck was ACI's president. Mrs. Streck was a signatory on ACI's bank account, and she signed checks as an officer on behalf of ACI. She also participated in voting on resolutions adopted by ACI's board of directors. Mrs. Streck was also an officer of P.G.D.

On August 1, 1993, in connection with an ongoing audit by respondent, petitioners submitted an Offer in Compromise (Form 656) to respondent's Appeals Officer Frank Sower with respect to

---

[8](...continued)
employer in Knoxville. On July 5, 1996, based on violations of the terms and conditions of his probation in connection with the 1988 convictions, Mr. Streck was reincarcerated.

their individual Federal income tax liabilities for the years 1983 through 1992 and their liability for withholding taxes attributable to Jamie Enterprises, Inc. (JEI), a corporation owned by Mrs. Streck.  This offer was in the amount of $2,000.[9]

On February 10, 1994, the original offer in compromise, dated August 1, 1993, was withdrawn by petitioners, and two revised offers were executed and submitted on Forms 656.  The first Form 656 related to petitioners' individual income tax liabilities for 1983 through 1992.  Petitioners offered to settle these liabilities for $19,000.  The second Form 656 was submitted by Mr. Streck on behalf of JEI to compromise its employment taxes for 1991 and 1992 for $1,000.

## OPINION

Petitioners' primary position is that they have previously entered into a binding settlement agreement with respondent regarding the years in issue.  They allege that the agreement was entered into when respondent's Appeals Officer accepted their offer in compromise prior to the issuance of the notice of deficiency.  It is not clear which of the two Forms 656 relating to their individual income taxes petitioners rely on.

---

[9]Petitioners had a case before this Court with respect to their 1987 tax year.  On Oct. 19, 1993, pursuant to an agreement by the parties, this Court entered its decision that there was no deficiency and no additions to tax with respect to the 1987 tax year.

The settlement of disputed tax liabilities is governed by sections 7121 and 7122, which authorize the Secretary or an authorized delegate to settle any tax disputes and compromise any civil or criminal case arising under the internal revenue laws. Klein v. Commissioner, 899 F.2d 1149, 1152 (11th Cir. 1990). Regulations under section 7122 clarify the procedure required with respect to an offer in compromise and how an offer may be accepted. Section 301.7122-1(d)(1), Proced. & Admin. Regs., requires that offers in compromise shall be submitted on forms prescribed by the Internal Revenue Service. Section 301.7122-1(d)(3), Proced. & Admin. Regs., states that "An offer in compromise shall be considered accepted only when the proponent thereof is so notified in writing."

Petitioners submitted a Form 656 to Mr. Sower on August 1, 1993. In the Form 656, petitioners offered $2,000 to settle their income tax liabilities for the years in issue plus certain withholding tax liabilities. Petitioners withdrew the original Form 656 on February 10, 1994, and submitted two separate offers on Forms 656 in place of the first. Each Form 656 referred to above contains a statement whereby the taxpayer-proponent agrees to waive and suspend the statutory period of limitations for assessment and collection. The Forms 656 also contain a signature line for an authorized Internal Revenue Service official to acknowledge that "I accept the waiver of statutory period of limitations for the Internal Revenue Service." Mr.

Sower's signature appears under this preprinted statement on each form. By signing the Forms 656, Mr. Sower accepted petitioners' waiver of the statutory period of limitations. By signing the Forms 656 in this manner, Mr. Sower did not accept petitioners' offers.

Form 656 makes it clear that Mr. Sower's signature was not an acceptance of petitioners' offer in compromise. Clause (8) of Form 656 states:

> The taxpayer-proponents agree to the waiver and suspension of any statutory periods of limitations for assessment and collection of the tax liability described in paragraph (1) while the offer is pending, during the time any amount offered remains unpaid and for one (1) year after the satisfaction of the terms of the offer. The offer shall be deemed pending from the date an authorized official of the Internal Revenue Service accepts taxpayer-proponents' waiver of the statutory periods of limitation and shall remain pending until an authorized official of the Internal Revenue Service formally, in writing, accepts, rejects or withdraws the offer. * * *

Clause (10) of Form 656 states that "It is understood that this offer will be considered and acted upon in due course and that it does not relieve the taxpayers from the liability sought to be compromised <u>unless and until the offer is accepted in writing by the Commissioner or a delegated official</u>, and there has been full compliance with the terms of the offer." (Emphasis added.) Petitioners signed the Forms 656 agreeing to these terms.[10]

---

[10]We note that if petitioners believed that Mr. Sower's

(continued...)

Petitioners next argue their offer was accepted orally by Mr. Sower. While it is not clear which offer petitioners refer to, they have failed to prove that Mr. Sower said or did anything that would constitute acceptance of any offer they made.

Both parties offered testimony regarding the alleged oral agreement. Mr. Streck testified that Mr. Sower orally represented that he would accept petitioners' signed offer in compromise. Petitioners' accountant, Mr. Mancini, who was present during meetings between Mr. Streck and Mr. Sower, did not recall any oral acceptance by Mr. Sower. Mr. Sower testified that he never told Mr. Streck that he would accept an offer in compromise relating to the years in issue. Mr. Sower testified that he "did not have the authority to accept or reject offers in compromises."[11] We believe Mr. Sower's testimony. It is consistent with the plain language on the Form 656. The testimony of petitioners' accountant is consistent with Mr. Sower's. Mr. Streck, on the other hand, has a long history of dishonest, criminal behavior and lacks credibility. We find that Mr. Sower never made, or purported to make, an oral acceptance of

---

[10](...continued)
signature on the first Form 656 constituted an acceptance, it makes no sense that they withdrew the first offer in order to make an offer to pay more.

[11]Mr. Sower did not have the authority to accept such an offer. See Boulez v. Commissioner, 76 T.C. 209, 213 (1981), affd. 810 F.2d 209 (D.C. Cir. 1987); Deleg. Order No. 11 (Rev. 23), 1994-1 C.B. 324; Deleg. Order No. 11 (Rev. 22), 1992-1 C.B. 488.

any offer to compromise petitioners' tax liabilities for the years in issue and that no settlement agreement with respect to the tax years 1983 through 1986 ever existed.[12]

Petitioners next argue that respondent improperly disallowed losses that they claimed from Double D Ranch, Inc., an S corporation. Petitioners deducted $277,582, $330,385, and $274,483 as their share of the purported losses of Double D Ranch, Inc., in 1984, 1985, and 1986, respectively. Respondent disallowed $200,331, $255,302, and $229,232 of those loss deductions in 1984, 1985, and 1986, respectively. These losses were disallowed because it had not been established to respondent's satisfaction that deductions taken by Double D Ranch, Inc., were ordinary and necessary business expenses or expenses incurred in an activity engaged in for the production of income.[13]

---

[12]Petitioners also argue that respondent should be estopped from rejecting their offer in compromise. The doctrine of equitable estoppel should be applied against the Government "'with utmost caution and restraint.'" Kronish v. Commissioner, 90 T.C. 684, 695 & n.10 (1988)(quoting Boulez v. Commissioner, supra at 214-215). In order for estoppel to apply, the proponent must show, among other things, the existence of a false representation and detrimental reliance on the representation. Id. Petitioners have failed to show any misrepresentations made by respondent.

[13]The only deductions that respondent allowed to Double D Ranch, Inc., were those for real estate taxes and interest. The Double D Ranch, Inc., loss amounts that respondent allowed to petitioners were computed as follows:

(continued...)

Respondent's determinations are presumed correct, and petitioners bear the burden of proving otherwise. Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933). Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deduction claimed. <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). Taxpayers must substantiate the amount of any deductions claimed. <u>Hradesky v. Commissioner</u>, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Taxpayers are required to keep sufficient records to enable the Commissioner to determine their correct tax liability. Sec. 6001.

Section 162 allows the deduction of ordinary and necessary expenses incurred in carrying on any trade or business. Section 212 allows the deduction of ordinary and necessary expenses for the production or collection of income or for the maintenance of property held for the production of income. Petitioners failed to substantiate their entitlement to deductions in an amount in excess of that already allowed by respondent. They did not produce records of Double D Ranch, Inc., such as journals,

---

[13](...continued)

|  | 1984 | 1985 | 1986 |
| --- | --- | --- | --- |
| Total income reported by Double D Ranch, Inc. | $1,500 | $0 | $18,817 |
| Less: |  |  |  |
| Total interest paid | (71,644) | (69,590) | (58,228) |
| Total real estate taxes paid | (7,107) | (5,493) | (5,840) |
| Total loss allowed | ($77,251) | ($75,083) | ($45,251) |

ledgers, invoices, or canceled checks. Petitioners did not prove that the Double D Ranch, Inc., incurred any expenses which could be classified as ordinary and necessary.

A taxpayer claiming a deduction under section 162 or 212 for an expense, or under section 165 for a loss, must have an "actual and honest profit objective" in order to avoid the disallowance of such deductions. See sec. 183; Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Mr. Streck testified that petitioners initially purchased a ranch located in Kentucky as "a getaway because I was working in New York and traveling all the time and we wanted to get out in the country." The ranch was later incorporated under the name Double D Ranch, Inc. Although petitioners apparently engaged in some farming, Mr. Streck testified that the farming activity was a "total disaster". Throughout the time petitioners owned Double D Ranch, Inc., they continued to use the log cabin constructed on corporate property as a personal residence and use the boat dock located on corporate property for pleasure. Petitioners failed to provide evidence of an actual and honest objective to make a profit. We sustain respondent's disallowance of deductions that petitioners claimed with respect to Double D Ranch, Inc.

The next issue is whether Mrs. Streck qualifies as an innocent spouse pursuant to section 6013(e). Generally, a husband and wife are jointly and severally liable for the total

tax due on their joint Federal income tax returns. Sec. 6013(d). In limited circumstances, however, a spouse may qualify as an "innocent spouse" and be relieved of joint and several liability. Sec. 6013(e). The spouse seeking relief under section 6013(e) bears the burden of proof. Rule 142(a); Bokum v. Commissioner, 94 T.C. 126, 138 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

In order for Mrs. Streck to qualify for innocent spouse status, she must prove that: (1) Petitioners filed a joint tax return; (2) on that joint tax return, there was a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the joint tax return, she did not know, nor have reason to know of the substantial understatement; and (4) taking into account all the facts and circumstances, it is inequitable to hold her liable for any deficiency attributable to the substantial understatement. Sec. 6013(e)(1)(A)-(D). Failure to meet any one of these requirements will prevent Mrs. Streck from qualifying as an innocent spouse. Bokum v. Commissioner, supra at 138. The parties agree that petitioners filed joint tax returns for 1983, 1984, 1985, and 1986. Respondent also concedes that there are substantial understatements on petitioners' tax returns for those years and that the unreported income for the years 1983 through 1985 constitutes grossly erroneous items of Mr. Streck.[14]

---

[14]Mrs. Streck claims that for purposes of sec. 6013(e), the

(continued...)

Under section 6013(e)(1)(C), Mrs. Streck must establish that in signing the tax returns for the years in issue, she did not know, and had no reason to know, there was a substantial understatement.  The standard to be applied in determining whether a taxpayer "had reason to know" is whether a reasonably prudent person with knowledge of the facts possessed by the person claiming innocent spouse status should have been alerted to the possibility of a substantial understatement.  Shea v. Commissioner, 780 F.2d 561, 566 (6th Cir. 1986), affg. in part and revg. in part T.C. Memo. 1984-310; Flynn v. Commissioner, 93 T.C. 355, 365 (1989).  Three factors are significant in determining whether a spouse had reason to know of an understatement of tax: (1) Participation in business affairs or bookkeeping by the alleged innocent spouse, Quinn v. Commissioner, 62 T.C. 223, 229-230 (1974), affd. 524 F.2d 617 (7th Cir. 1975), (2) the culpable spouse's refusal to be

---

¹⁴(...continued)
deductions disallowed are attributable to grossly erroneous items of Mr. Streck.  Sec. 6013(e)(2)(B) defines "grossly erroneous items" as "any claim of a deduction, credit, or basis * * * for which there is no basis in fact or law."  Mrs. Streck must prove that the disallowed deductions have no basis in fact or law. Flynn v. Commissioner, 93 T.C. 355, 360 (1989).  Mrs. Streck failed to establish that the deductions disallowed by respondent were frivolous, fraudulent, or phony.  Id. at 364.  Both Mr. and Mrs. Streck argued that the deductions related to Double D Ranch, Inc., are valid business expenses.  As previously indicated, petitioners failed to produce evidence of the amount and nature of the expenses of Double D Ranch, Inc., that were disallowed. We find that Mrs. Streck has not proven that any of the deductions were grossly erroneous items.

forthright concerning the couple's income, <u>Adams v. Commissioner</u>, 60 T.C. 300, 303 (1973), and (3) the presence of unusual or lavish expenditures, <u>Mysse v. Commissioner</u>, 57 T.C. 680, 699 (1972). Another factor the courts have focused on is whether the couple's standard of living improved significantly during the years in issue. <u>Id.</u> at 698-699.

Mrs. Streck participated in the business affairs and bookkeeping of petitioners' businesses. During the years in issue, Mrs. Streck was the sole shareholder of ACI. Mrs. Streck was a signatory on ACI's bank account, and she signed checks as an officer on behalf of ACI. She also participated in voting on resolutions adopted by the board of directors of ACI. Mrs. Streck was an officer of P.G.D., a corporation wholly owned by Mr. Streck. Mrs. Streck testified that she wrote and signed checks for all of petitioners' businesses including ACI. She also testified she made deposits to corporate bank accounts and paid invoices from corporate accounts. We find that Mrs. Streck substantially participated in petitioners' combined business affairs.

Mrs. Streck provided absolutely no evidence or argument that Mr. Streck refused to disclose information or was not forthright with her regarding their financial affairs.

Family expenditures during the years in issue appear to be lavish within the meaning of <u>Mysse v. Commissioner</u>, <u>supra</u> at 699. During 1984, through Double D Ranch, Inc., petitioners

constructed a log cabin at an approximate cost of $494,000, which they used as their residence. Petitioners purchased other luxury items during 1984 and 1985, including two 1985 new Mercedes Benz automobiles, a $92,000 boat, and four Honda motorcycles. Also, in 1985, petitioners purchased two condominiums in Florida, one on Marco Island for $265,000 and upon its sale, another in Naples for approximately $675,000. Some of these purchases occurred during or shortly after the time Mr. Streck had filed for relief

in bankruptcy in October 1983.[15]  Their 1986 financial statement
indicates that petitioners owned valuable furs and jewelry.

These expenditures appear inconsistent with the amounts
petitioners reported on their tax returns and would have alerted
Mrs. Streck to the fact that there were understatements of income

---

[15]In his October debtor's petition filed in the U.S.
Bankruptcy Court, Mr. Streck listed debts of $1,999,678 and
assets of $548,994.  A financial statement prepared by
petitioners' accountant, a C.P.A., based on information received
from petitioners, reflects petitioners' assets and liabilities as
of Sept. 30, 1986, as follows:

Assets

| | |
|---|---|
| Cash and cash equivalents | $36,600 |
| Investments, nonmarketable equity securities | 1,408,000 |
| Residence | 770,000 |
| Automobile | 54,500 |
| Furs, jewelry, household items, etc. | 200,000 |
| | $2,469,100 |

Liabilities and Net Worth

| | |
|---|---|
| Income taxes, current year balance | $500,000 |
| Notes payable, financial institutions | 817,800 |
| Estimated income taxes, on the difference between the estimated current values of assets and the estimated current amounts of liabilities and their tax bases | 215,000 |
| Net worth | 936,300 |
| | $2,469,100 |

on petitioners' returns.[16] We find that Mrs. Streck knew or should have known that there were understatements of tax on the returns in issue.

Mrs. Streck has also failed to show that it would be inequitable to hold her jointly and severally liable for the disputed taxes. An important factor in determining whether it is inequitable to hold a spouse liable is whether that spouse significantly benefited, either directly or indirectly, from the understatement of taxes. Belk v. Commissioner, 93 T.C. 434, 440 (1989); Purcell v. Commissioner, 86 T.C. 228, 242 (1986), affd. 826 F.2d 470 (6th Cir. 1987); sec. 1.6013-5(b), Income Tax Regs. Normal support is not considered a significant benefit. Terzian v. Commissioner, 72 T.C. 1164, 1172 (1979). Mrs. Streck bears the burden of proving that she received no significant benefit from the unreported income other than normal support, and this burden must be supported with specific evidence of lifestyle expenditures, as well as asset acquisitions. Bokum v. Commissioner, 94 T.C. at 157; Estate of Krock v. Commissioner, 93 T.C. 672, 681 (1989).

Mrs. Streck failed to provide any specific evidence that her lifestyle and asset acquisitions were normal support. There is no evidence of petitioners' lifestyle prior to 1983. Petitioners

---

[16]On their tax returns, petitioners reported taxable income of zero in 1983, $66,857 in 1984 (after amendments), $31,561 in 1985, and $103,836 in 1986.

purchased numerous luxury items during the years in issue, including new Mercedes Benz automobiles, an expensive boat, and various residences. Petitioners' 1986 financial statement indicates that their joint net worth increased since Mr. Streck's bankruptcy.[17] The financial statement indicates that petitioners owned valuable furs and jewelry. We find that Mrs. Streck failed to show she did not significantly benefit from the understatement of taxes.

The next issue concerns petitioners' liability for additions to tax under sections 6653(a) and 6661. Respondent determined that petitioners are liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1)(A) and (B) for the taxable year 1986. As in effect during 1986, section 6653(a)(1)(A) imposed an addition to tax equal to 5 percent of the underpayment of tax where any part of the underpayment was due to negligence or disregard of rules or regulations. Section 6653(a)(1)(B) imposed an addition to tax in an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment which was attributable to negligence.

Respondent also determined that petitioners are liable for the addition to tax for substantial understatement of income tax

---

[17]There is nothing to indicate Mrs. Streck's separate financial status prior to petitioners' financial statement as of Sept. 30, 1986.

pursuant to section 6661 with respect to their 1983, 1984, and 1985 income tax returns.  As in effect during 1983, 1984, and 1985, section 6661(a) imposed an addition to tax equal to 10 percent of the amount of any underpayment attributable to a substantial understatement of income tax.  An understatement is defined in section 6661(b)(2)(A) as the excess of the amount of tax required to be shown on the return over the amount of tax imposed which is shown on the return.  There is a substantial understatement under section 6661(b)(1)(A) if the amount of the understatement for the taxable year exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  All of petitioners' tax returns for the years in issue have understatements of tax in excess of the threshold.

Petitioners bear the burden of proving that the additions to tax do not apply.  Rule 142(a); Luman v. Commissioner, 79 T.C. 846, 861-862 (1982).  Petitioners failed to introduce convincing evidence that they were not negligent or that respondent's determination is erroneous.  Accordingly, we sustain respondent's determination that petitioners are liable for the additions to tax pursuant to section 6653(a)(1)(A) and (B) in 1986 and section 6661 with respect to their returns in 1983, 1984, and 1985.

Decision will be entered

under Rule 155.